[Crim. No. 17773. First Dist., Div. Four. Apr. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY IRL GLOVER, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Harriet Wiss Hirsch and Carol Jean Ryan, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Clifford K. Thompson, Jr., and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DELUCCHI, J.**\*—Defendant-appellant Billy Irl Glover (hereafter appellant) appeals from a judgment of conviction for violation of Penal Code section 211 (robbery) following the denial of his motion to suppress evidence and a plea of guilty. Appellant attacks the trial court's ruling on his section 1538.5 motion, claiming that currency and coin seized from appellant's vehicle should have been suppressed as the fruit of an illegal detention.

---

*Assigned by the Chairperson of the Judicial Council.

## STATEMENT OF FACTS

On February 19, 1976, the Del Norte County Grand Jury issued an indictment charging appellant with robbery (Pen. Code, § 211), burglary (Pen. Code, § 459), receiving stolen property (Pen. Code, § 496, subd. 1) and the possession and carrying of a firearm by an ex-felon (Pen. Code, §§ 12021, 12025). There were further allegations that appellant was armed and used a firearm during the commission of some of the offenses.

After a jury verdict finding appellant guilty of the charged offenses, he appealed to this court. We reversed the conviction on May 27, 1977, in an unpublished opinion. (1 Crim. 15704)

The matter came again before the superior court, where appellant entered pleas of not guilty and not guilty by reason of insanity.

Appellant filed motions for change of venue, suppression of evidence under section 1538.5, and for dismissal of the indictment on grounds of destruction of evidence by the prosecution. All three motions were denied on October 17, 1977.

At the section 1538.5 motion the following testimony was introduced: On the evening of February 1, 1976, Del Norte County Deputy Sheriff Joe Lawson and reserve Deputy Dennis Louy were on patrol. At approximately 11:25 p.m., they heard a radio broadcast that an armed robbery had taken place at the Ship Ashore Motel, near the town of Smith River. The suspect was described as six feet three to six feet four inches tall, ear length brown hair, and wearing a gray suit and brown cowboy boots.

There were three vehicular escape routes from the Ship Ashore: North on Highway 101 to the Oregon border, south on Highway 101, or east on North Bank Road (also known as Highway 197), which connects with Highway 199.

Police roadblocks were set up to block all three escape routes, with Officers Lawson and Louy assigned to station themselves on North Bank Road just prior to its intersection with Highway 199. They arrived at their destination within three to four minutes following the broadcast. Lieutenant Charles Hupp arrived four minutes later in a separate vehicle. The officers parked their vehicles so as to block both lanes of the roadway. The headlights from both cars and the red light of the patrol car were pointed down the road. Officer Lawson was armed with an 18-inch

riot-type 12-gauge shotgun, while all 3 officers carried service revolvers. The officers intended to stop every vehicle that came down the road.

The first vehicle to come along was a Datsun pick-up, driven by appellant. The Datsun approached at a normal rate of speed and came to a stop in front of the roadblock. After the vehicle came to a halt, the officers could see that appellant fit the general description they had received over the radio, although his clothing did not seem to match. Lt. Hupp approached the vehicle and asked appellant for some identification. Appellant handed him a business card. Lt. Hupp handed it back to him and asked to see a driver's license. Appellant complied. At about this point, appellant got out of the vehicle and the officers observed that he was wearing brown boots. Officer Lawson, who was holding the shotgun, asked appellant if they could look in the back of his pickup truck. Appellant said it was fine with him. He walked to the canopy portion of the truck and started to open a briefcase. At this point, Officer Lawson pointed the shotgun at appellant. When appellant closed the briefcase, Lawson returned the shotgun to "port arms" position. Appellant was then asked if the officers could look in the front of his truck. He replied affirmatively. Officer Louy tried the passenger door but it was locked. Lawson then asked appellant if he would unlock the door for them. When appellant complied, Officer Louy searched the interior of the vehicle and found several stacks of one dollar bills and several rolls of change in the glove compartment.

Appellant moved to suppress the above described evidence on grounds, inter alia, that the detention was unlawful. The court denied the motion and appellant subsequently pled guilty to robbery. As part of the agreement between the prosecution and defense, appellant preserved the right to appeal the court's denial of his motion to suppress under Penal Code section 1538.5, subdivision (m).

ISSUE

Was the search the product of an unlawful detention?

Appellant contends that the currency seized as the result of the search of his vehicle should have been suppressed in that the police roadblock constituted an unlawful detention in violation of his Fourth Amendment rights.

■ Although it is settled that "circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning" (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]), certain standards for judging the lawfulness of a temporary detention have emerged. As the California Supreme Court recently summarized in *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957]: "The guiding principle, as in all issues arising under the Fourth Amendment and under the California Constitution (Cal. Const., art. I, § 19; see *People* v. *Triggs* (1973) 8 Cal.3d 884, 891-892, fn. 5 [106 Cal.Rptr. 408, 506 P.2d 232] . . .), is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' (*Terry* v. *Ohio, supra,* 392 U.S. at p. 19 [20 L.Ed.2d at p. 904]) . . . [T]he courts have concluded that in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include *specific* and *articulable* facts causing him to suspect that (1) *some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity.* Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience (*People* v. *Superior Court (Kiefer) supra,* 3 Cal.3d at p. 827), to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 22 [20 L.Ed.2d at pp. 906-907]. . . .)" (*In re Tony C., supra,* 21 Cal.3d at pp. 892-893, italics added, fn. omitted.)

■ In the present case the first requirement is present—the officers knew from the radio broadcast they received that a robbery had occurred at the Ship Ashore Motel. We conclude, however, the second criteria, that the person intended to be detained was somehow involved in that activity, was not sufficiently met.

So far as the officers' states of mind were concerned, the record reveals simply (1) the knowledge that a crime had been committed and (2) a decision to stop every vehicle leaving the vicinity. The officers did not have a description of a getaway vehicle or the direction of its flight. Indeed, they were not even aware that the suspect *had* a vehicle, although it would have been a reasonable inference. Two of the officers stated that

appellant's pickup arrived in approximately the time they estimated it would have taken to drive from the scene of the robbery to the roadblock, but neither indicated that this was a motivating cause for the detention. All the officers admitted that they could not see any of appellant's features until the vehicle was stopped, and all agreed that there was nothing abnormal about the way it approached the roadblock. Furthermore, the officers did not articulate any belief that the vehicle was connected to the crime in any way. They simply had made up their minds to routinely "*stop every vehicle that came down the road.*" (Italics added.) This is contraindicative of a subjective state of mind that the vehicle being stopped was involved in the crime being investigated as required in *In re Tony C., supra.*

■ Every citizen has the constitutional right to free passage on the public highways. (*Wirin* v. *Horrall* (1948) 85 Cal.App.2d 497, 501 [193 P.2d 470]; *Carroll* v. *United States* (1925) 267 U.S. 132, 154 [69 L.Ed. 543, 551-552, 45 S.Ct. 280, 39 A.L.R. 790]; see also, *People* v. *Hyde* (1974) 12 Cal.3d 158, 164 [115 Cal.Rptr. 358, 524 P.2d 830].) The mere possibility that a motor vehicle may be used for criminal activity is insufficient of itself to justify a stop and search. (*People* v. *Gale* (1956) 46 Cal.2d 253, 256 [294 P.2d 13].) As stated in *People* v. *Horton* (1971) 14 Cal.App.3d 930, 934 [92 Cal.Rptr. 666]: ". . . [T]he right of the citizen to drive on a public street with freedom from police interference, *unless he is engaged in suspicious conduct associated in some manner with criminality,* is a fundamental constitutional right which must be protected by the courts." (Italics added.) ■ In the absence of other facts upon which the officers relied connecting appellant with criminal activity, his mere presence in a moving vehicle on the highway some 15 miles from the scene of a holdup was plainly inadequate to justify detention.

So far as the record shows, the officers' decision to stop appellant's vehicle was not made upon the basis of any unusual circumstances indicating involvement in criminal activity. Instead, it was premised upon a guess or speculation that one of the motorists stopped on the highway might turn out to be the perpetrator of the Ship Ashore Motel robbery. Respondent's emphasis on the rural nature of the area and the lateness of the hour is not persuasive. The fact that traffic was light at that particular time and place did not transform the public highways into a pond for a police dragnet.*

---

*We should observe that these conclusions are commanded by the limited record made on appellant's motion. If the officer or officers responsible for setting up the roadblock believed that *anyone* driving on Long Bank Road was likely to be the robber, the

Roadblocks for purposes of general search have been twice disapproved by California courts. (*Wirin* v. *Horrall, supra,* 85 Cal.App.2d 497, 501; *People* v. *Gale, supra,* 46 Cal.2d 253, 256; see also, *Almeida-Sanchez* v. *United States* (1973) 413 U.S. 266 [37 L.Ed.2d 596, 93 S.Ct. 2535].) While the imminent threat of harm to a victim or the knowledge that the culprits had just committed a particularly atrocious crime might conceivably be a factor which should be considered in favor of such methods (see *People* v. *Schader* (1965) 62 Cal.2d 716, 724 [44 Cal.Rptr. 193, 401 P.2d 665]), no such factors are present here.

We conclude that the actions of the police in this instance were inconsistent with the standards as set forth in *In re Tony C., supra,* and therefore violative of the Fourth Amendment.

Since the police did not have reasonable cause to stop appellant's vehicle, any search made immediately following that detention, even if consented to, was invalid. (*People* v. *Horton, supra,* at p. 934; *People* v. *Franklin* (1968) 261 Cal.App.2d 703, 707 [68 Cal.Rptr. 231]; see also *People* v. *Haven* (1963) 59 Cal.2d 713, 718 [31 Cal.Rptr. 47, 381 P.2d 927].) Hence, the fruits of that search should have been suppressed by the trial court, and the section 1538.5 motion granted.

In light of the foregoing conclusion, appellant's other contentions raised on appeal need not be discussed.

The judgment is reversed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied May 24, 1979, and respondent's petition for a hearing by the Supreme Court was denied July 5, 1979.

---

reasonableness of that belief might conceivably have been shown by detailed proof of such matters as the remoteness of the area, its sparse population, and the normal incidence of vehicular traffic on Del Norte County highways at a late hour on a midwinter night. The district attorney showed nothing of the sort, and the officer or officers who established the several roadblocks were not even called. Reasonable cause for the roadblocks, or for stopping appellant, may not be established by speculation.