[Crim. No. 13246. Fourth Dist., Div. One. Oct. 27, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
DANIEL McCLUSKEY et al., Defendants and Respondents.

COUNSEL

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Henry R. Mann, Deputy District Attorneys, for Plaintiff and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Kenyon C. Keller, Deputy State Public Defender, E. Stephen Temko and Donald M. Rosenstock for Defendants and Respondents.

OPINION

WIENER, J.—The People appeal from an order of dismissal (Pen. Code, § 1385)[1] challenging defendants' successful section 1538.5 motion. The issue is whether the officer had sufficient justification to stop and detain the defendants. As we will explain, we conclude the stop and detention were constitutionally reasonable and accordingly we reverse the order dismissing the information and direct the trial court to set aside the order suppressing evidence.

FACTUAL BACKGROUND

Shortly before 1 a.m. on October 26, 1980, a male entered Lavicio's in Vista, pulled out a handgun and stated, "This is a hold-up." He took the cash drawer, $41.35, four packs of Camels, a twelve-pack of beer, two bags of potato chips and some food stamps. Goggin, the clerk, im-

---

[1]All statutory references are to the Penal Code.

mediately called the sheriff's department, giving the following description of the man who robbed him: about 5 feet 10 inches tall, brown hair with center part, mustache, between 19 and 21 years old, blue jacket, Chicano. Goggin also told the sheriff's department he saw the suspect leave the store and walk around the building up Palomar Place.

At about 12:53 a.m., Deputy Olsen received a radio dispatch reporting a robbery had just occurred at Lavicio's. The report included Goggin's description of the suspect.[2]

About five minutes later, as he was driving his patrol car north on East Vista Way, Olsen observed a vehicle, a green Cougar, making a left turn onto southbound East Vista Way from westbound Foothill Drive. This intersection is located two to three blocks (about one-fourth mile) from Lavicio's. Two streets, Oak and Bonair, connect Palomar Place and Foothill Drive. Olsen saw no other vehicles in the area. As the two cars passed, the Cougar was traveling about 35 to 45 miles per hour. Olsen may have been driving more slowly.[3] He testified he looked at the occupants of the Cougar as it passed and decided the passenger's appearance matched the radio description. Olsen made a U-turn, followed the Cougar for about two blocks and then turned on the overhead blue and red revolving lights on the patrol car. The suspect vehicle traveled three or four blocks after these lights were activated before stopping.[4] About seven minutes elapsed between Olsen's receipt of the radio dispatch and when the driver of the Cougar stopped the car.

Olsen first asked for and obtained the identification of the driver—McCluskey. Then he asked McCluskey for permission to search the vehicle, including the trunk. McCluskey replied, "Yes, go ahead." The search of the vehicle interior produced a 12-pack of beer, 4 pack-

---

[2]Although Goggin testified he had described the suspect as wearing blue Levis, Olsen testified the dispatch described the suspect as wearing tan pants. This discrepancy is unimportant, however, because Olsen also testified when he stopped a green Cougar because he thought the passenger's appearance matched the dispatch description of the suspect, he could not see the suspect's pants.

[3]At the preliminary hearing Olsen testified he was traveling at about 40 to 45 miles per hour when the vehicles passed. At the hearing on the section 1538.5 motion, he testified his speed was "considerably slower" than the Cougar's when they passed because he slowed down in order to see the people in the Cougar.

[4]Olsen testified that, as he followed the Cougar, he saw the passenger bending over, moving his shoulders in an up and down motion. He also testified the Cougar did not stop for several blocks after the red and blue lights were activated. Olsen stated, however, he did not consider these facts when he decided to stop the Cougar.

ages of Camel cigarettes, a cash register coin tray and a greenish-blue plaid flannel-type woolen shirt. Deputies found money in Harold William Shaparnis' boots, socks, pockets and waistband while conducting a prebooking patdown search for weapons.

After a deputy took him to the scene of the roadside stop, Goggin positively identified Shaparnis as the person who robbed him at Lavicio's earlier that evening. Goggin also positively identified Shaparnis in court.

Shaparnis was charged with one count of robbery (§ 211) and McCluskey with two counts.[5] In addition, the People alleged Shaparnis personally used a firearm (§ 12022.5) and McCluskey was armed with a firearm (§ 12022, subd. (a)).

## DISCUSSION

### Scope of Review

Section 1238, subdivision (c) provides the court may review the order granting defendant's motion to suppress evidence when the People appeal from the trial court's section 1385 order dismissing a case before trial after granting the motion to suppress evidence. In reviewing the trial court's ruling on the motion to suppress evidence, we first must determine whether the trial court's findings of fact relating to the challenged search or seizure are supported by substantial evidence (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]). Examples of factual findings include the perception, knowledge, beliefs and responsive actions of a police officer. In addition, the trial court has "the power to judge the credibility of the witnesses, resolve any conflicts in testimony, weigh the evidence and draw factual inferences, . . ." (*Ibid.*)

In McCluskey's and Shaparnis' case, the trial court made the following factual findings: "An officer receives a radio communication of a crime committed late at night in a market . . . . Seven minutes later and a quarter of a mile away [from the market] he sees a vehicle with a

---

[5]The additional section 211 count on McCluskey stemmed from the robbery of a 7-Eleven in Vista on October 20, 1981, six days before the Lavicio's robbery. The 7-Eleven clerk, Kirkland, positively identified McCluskey in a photographic lineup after his arrest following the Lavicio's robbery and tentatively identified McCluskey in court. Kirkland could not identify the other male involved in the 7-Eleven robbery.

person riding in the vehicle with the description that he had from the market. That description being a young Mexican with dark hair and dark jacket."

Olsen's testimony at the hearing on the motion to suppress evidence supports the court's factual findings. He testified he observed the occupants of the Cougar as it passed and noted the passenger was a male Mexican, 20 years old, dark hair, wearing a dark jacket. Believing the passenger's appearance matched the radio description of the robbery suspect, Olsen decided to stop the Cougar. We conclude the trial court's factual finding that Olsen saw in the Cougar a person who looked like the description of the robbery suspect is supported by substantial evidence.

### The Stop and Detention Were Constitutionally Reasonable

As the second step in our review of the court's ruling on the motion to suppress evidence, we must exercise our "independent judgment" in determining whether the court correctly found the search was unreasonable within the meaning of the Constitution (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961]). We have the ultimate responsibility "to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*Ibid.*; *People* v. *Lawler, supra*, 9 Cal.3d 156, 160.) The appellate court is therefore not bound by the substantial evidence standard in reviewing the trial court's decision on the constitutional issue (*People* v. *Leyba, supra*, 29 Cal.3d 591).

To determine whether the stop and detention were constitutionally reasonable we must apply the following standards set forth by the Supreme Court in *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957]: A police officer may be justified in stopping and briefly detaining a person for questioning or other limited investigation even though he lacks probable cause to make an arrest (*id.*, at p. 892). "[C]ircumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*Id.*, at p. 893.) Not only must the officer subjectively entertain such a suspicion, but also it must be objectively reasonable for him to do so. "[T]he facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and exper-

ience [citation], to suspect the same criminal activity and the same involvement by the person in question." (*Ibid.*, fn. omitted.)

■ In McCluskey's and Shaparnis' case, Deputy Olsen testified he received a radio dispatch indicating a robbery had recently taken place nearby. He therefore subjectively believed a crime had occurred. It was objectively reasonable for him to so believe on the basis of the dispatch. The trial court found Olsen also subjectively believed Shaparnis was the robbery suspect. The only issue we must resolve, therefore, is whether it was objectively reasonable for Olsen to believe Shaparnis was the suspect. Olsen knew from the dispatch an armed robbery had occurred minutes earlier at Lavicio's in the immediate vicinity. As he drove toward Lavicio's, Olsen saw the Cougar traveling in the opposite direction. He saw no other vehicles in the vicinity. The time was shortly before 1 a.m. As he passed the Cougar, Olsen observed the driver and passenger. He decided the passenger's appearance matched the description of the suspect. The description indicated the suspect was a 19- to 21-year-old Mexican male about 5 feet 10 inches tall, brown hair with a center part, mustache and dressed in a blue jacket. Olsen testified he observed the passenger was a 20-year-old Mexican male with dark hair and a dark jacket. We conclude Deputy Olsen's suspicion Shaparnis was involved in the Lavicio's robbery was objectively reasonable.

The trial court granted the motion to suppress evidence because it concluded "[I]t is too much of a random stop. You can't stop all young Mexicans driving cars in Vista." The court apparently based its conclusion on the Supreme Court's holding in *People* v. *Bower* (1979) 24 Cal.3d 638 [156 Cal.Rptr. 856, 597 P.2d 115]. In *Bower*, the officer testified he decided to detain appellant because he was "a Caucasian in a predominantly black area where the officer had never observed a white person 'on foot in the hours of darkness ... for innocent purpose.'" (*Id.* at p. 644.)

The Supreme Court stated: "[T]he fact that appellant was a white man could raise no reasonable suspicion of crime. A person's racial status is not an 'unusual' circumstance and the presence of an individual of one race in an area inhabited primarily by members of another race is not a sufficient basis to suggest that crime is afoot." (*Ibid.*) Here, however, Deputy Olsen was justified in stopping the Cougar and detaining its occupants based on a combination of several factors: his knowledge a robbery had recently occurred in the vicinity, his observation the suspect's car was traveling in a direction consistent with the suspect's

involvement in the robbery and his receipt of the suspect's description which included ethnic origin, attire, sex and age. Because the stop was not based solely upon the suspect's ethnic origin, the rationale of *Bower* is inapplicable. The fortuitous fact that one part of this sufficiently detailed, accurate description of the robber may have included a disproportionate number of persons within the community does not vitiate the reasonableness of the stop. If such commonality were to invariably impair a detention, only those with unique physical characteristics could be stopped. Obviously, such a rule makes little sense.

The trial court decided Deputy Olsen lacked sufficient justification to stop the Cougar and detain its occupants. It therefore granted defendants' motion to suppress evidence, including evidence found in the vehicle and the identifications by victims Goggin and Kirkland. Because we have concluded the stop and detention were constitutionally reasonable, the court erred in suppressing the evidence.

*Disposition*

The order of dismissal is reversed; the trial court is directed to set aside the order suppressing evidence.

Work, J., and Cologne, Acting P. J., concurred.

On November 4, 1981, the opinion was modified to read as printed above. Respondents' petitions for a hearing by the Supreme Court were denied December 23, 1981. Bird, C. J., was of the opinion that the petitions should be granted.