[No. D019909. Fourth Dist., Div. One. Oct. 7, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICE OVERTEN, Defendant and Appellant.

1498

## COUNSEL

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—Maurice Overten appeals a judgment entered after a jury convicted him of first degree residential robbery (Pen. Code,[1] §§ 211, 212.5, subd. (a)) and found true the special allegation he was armed with a firearm during the commission of the offense (§ 12022, subd. (a)(1)[2]). He contends the true finding to the firearm enhancement should be set aside because the

---

[1] All statutory references are to the Penal Code.

[2] Section 12022, subdivision (a)(1) provides: "Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission or attempted commission of a felony shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been

prosecutor's closing argument prejudicially misled the jury concerning the knowledge requirement for violating section 12022, subdivision (a)(1) as an aider and abettor and that the jury instruction defining vicarious arming with a firearm failed to state Overten had to know of the presence of the firearm in order for the enhancement allegation to be found true. He further contends the trial court erroneously denied his motion to suppress evidence. As we shall explain, we conclude there is no scienter requirement for an aider or abettor to be found vicariously armed with a firearm under section 12022, subdivision (a)(1) and that Overten's motion to suppress was properly denied. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 1993, at approximately 8 p.m., two men wearing sweatshirts with hoods over their heads entered the La Avenida Motel on Orange Avenue in Coronado. One man held a gun to the forehead of the live-in manager, Luz Cantwell, while the other went around the counter and put a gun to her temple. They then shoved her to the floor and told her she was being robbed and several times stated they were going to kill her. The robbers pulled the money out of the cash register and fled. Within 30 seconds of their departure, Cantwell called the police.

Within minutes of receiving a radio dispatch describing the robbers, Coronado Police Officer Robert Kline saw Overten, wearing a hooded dark jacket, driving eastbound onto the Coronado Bridge, one of the two exits off Coronado. In his police cruiser marked "Coronado Police Department," Officer Kline began to follow Overten's car across the Coronado Bridge, during which he saw two other Black individuals pop their heads up from the right front passenger's seat and rear passenger's seat in the car. Overten's car continued onto north Interstate 5, during which time the passengers' heads popped up two or three times looking at Officer Kline, and then returned down. Officer Kline stopped Overten at 19th and J Streets in San Diego and ordered him out of the car and later, with cover, removed the passengers. Overten was identified as the driver and the passengers included Askari Morris and David Skaggs. Five to ten minutes later, Cantwell was taken to the scene of the stop where she identified Morris and Skaggs as the two men who robbed her. In plain view on the right front passenger's floorboard, was a ripped up register tape and ripped up personal check taken

---

convicted, be punished by an additional term of one year, unless the arming is an element of the offense of which he or she was convicted. This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm."

in the robbery, a black mask and the phone receiver ripped off the wall in the robbery. Coins stolen in the robbery and a box of .32-caliber automatic cartridges were found under the left rear passenger seat. A loaded automatic handgun on the top of a wad of cash stolen in the robbery and another loaded magazine for that gun were found. Wedged to the left of the driver's seat, a black knit watch cap was found under the left rear passenger seat. A second unloaded handgun, a .380-caliber automatic, along with a loaded magazine and a loose .380-caliber round of ammunition was discovered inside a hole in the driver's seat behind the driver's back.

An information charging Overten with first degree residential burglary and alleging he was armed with a firearm during the commission of the offense was filed on February 24, 1993. Trial commenced on April 12, and on April 21 a jury convicted Overten of the offense and the accompanying firearm enhancement allegation was found true. He was sentenced to prison for five years (a four-year middle term for first degree residential robbery plus one year for the armed enhancement).

*Knowledge Is Not a Necessary Element for Vicarious Liability*
*Under Section 12022, Subdivision (a)(1) for a Coprincipal's*
*Being Armed With a Firearm*

 Overten's first two contentions are predicated upon the same theory, that for an aider and abettor to be vicariously armed with a firearm under section 12022, subdivision (a)(1), the prosecution must establish the aider and abettor knew the other principal was armed. Consequently, Overten contends the true finding to the firearm enhancement must be set aside because he claims the prosecutor prejudicially misled the jury by arguing there was no scienter requirement for a true finding under the statute. He urges this error was compounded by the trial court's jury instruction defining vicarious arming with a firearm without including a knowledge element. However, we conclude there is no requirement an aider and abettor know any principal is armed with a firearm to be found vicariously armed under section 12022, subdivision (a)(1).

This issue of whether knowledge constitutes a necessary element of vicarious liability under section 12022, subdivision (a)(1) for a coprincipal's being armed with a firearm has been addressed directly in only one reported decision, *People* v. *McGreen* (1980) 107 Cal.App.3d 504, 523-525 [166 Cal.Rptr. 360], overruled on other grounds in *People* v. *Wolcott* (1983) 34 Cal.3d 92, 101 [192 Cal.Rptr. 748, 665 P.2d 520]. In *McGreen*, the court specifically rejected the contention the trial court erred by failing to instruct the jury that an essential element of liability for increased punishment under

former section 12022, subdivision (a) on account of a coprincipal's being armed with a firearm is knowledge the coprincipal was so armed. Acknowledging that the legislative history underlying section 12022 did not directly resolve the issue, the court nevertheless held that the legislative intent underlying the scheme was not "to impose a scienter burden upon the prosecution to prove that a principal knew or should have known that his confederate in the commission of a felony was carrying a firearm. Certainly, if the Legislature had so intended, it could have said so." (*People* v. *McGreen*, *supra*, 107 Cal.App.3d at pp. 524-525.) The court reached this conclusion after reviewing the differential treatment between vicarious possession of a firearm and personal use of a dangerous or deadly weapon as well as a firearm within the statutory scheme, giving rise to the conclusion the Legislature had determined that "firearms in the *possession* of a person committing a felony present such a physical threat that all principals in the commission of the felony shall suffer the additional one-year punishment . . . ." (*Id.* at p. 524, italics in original.)

 This construction is entirely consistent with the legislative intent underlying the arming enhancements.

" 'The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. The underlying intent of the Legislature is to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of the crime. Thus there is aggravated punishment for a person who is armed with a deadly weapon even though no use is made of the weapon. A person is armed with a deadly weapon when he simply carries such weapon *or has it available for use* in either offense or defense.' " (*People* v. *Wandick* (1991) 227 Cal.App.3d 918, 927-928 [278 Cal.Rptr. 274], original italics, quoting *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163].) The foregoing rationale explains the legislative decision to include vicarious liability in section 12022, subdivision (a)(1).

A cursory review of the four relevant subdivisions of section 12022 makes it clear the Legislature was quite aware it was imposing vicarious liability under subdivision (a)(1) without any scienter requirement.

Section 12022, subdivision (a)(1) provides that "any person who is armed with a firearm" during the commission of a felony shall receive a one-year enhancement, and that this enhancement applies to any principal in the commission of the offense regardless whether such person is personally

armed with a firearm. (*People* v. *Smith* (1992) 9 Cal.App.4th 196, 204 [11 Cal.Rptr.2d 645]; *People* v. *Gonzales* (1992) 8 Cal.App.4th 1658, 1662 [11 Cal.Rptr.2d 267].) Subdivision (b) provides an enhancement for "[a]ny person who personally uses" a dangerous or deadly weapon. Subdivision (c) provides an enhancement of three, four or five years for "any person who is personally armed with a firearm" during the commission of specified narcotics offenses, while subdivision (d) provides an enhancement of one, two or three years for "any person who is not personally armed with a firearm" who *knows* that another principal is "personally armed" during the commission of the offense specified in subdivision (c). (See *People* v. *Superior Court (Pomilia)* (1991) 235 Cal.App.3d 1464, 1469 [1 Cal.Rptr.2d 386].) By specifically requiring a scienter requirement within subdivision (d) for any person who is not personally armed with a firearm during the commission of an offense specified in subdivision (c) to be subject to being punished by a term of one, two or three years in the court's discretion, the Legislature inferentially was quite aware it was imposing vicarious liability without any scienter requirement in subdivision (a)(1) for those who committed felonies not specified within subdivision (c).

Consequently, given the foregoing legislative intent and apparent election not to include a scienter requirement within subdivision (a)(1) of section 12022 as to those principals vicariously liable for another principal being personally armed with a firearm, other statutory language and/or decisional precedent construing statutory language containing a scienter requirement or defining "personally armed with a firearm" are irrelevant to the express vicarious arming liability for aiders and abettors of felonies in general set forth in subdivision (a)(1). Further, contrary to Overten's assertion, this blanket vicarious liability of a principal who is unaware another principal is armed is not inconsistent with the legislative intent to deter the use of firearms in the commission of crimes, for it warns such coprincipals to take affirmative action to dissuade other principals from being armed with firearms during the commission of felonies. Accordingly, the prosecutor's closing argument did not prejudicially mislead the jury regarding the absence of any scienter requirement for a true finding Overten violated subdivision (a)(1), but correctly presented the law.[3] Similarly, the trial court properly instructed the jury on the enhancement, giving CALJIC No. 17.15,

---

[3]During closing argument, the prosecutor argued:

"And I will take the second one first. The arming, all the defendant has to do is know that a robbery is occurring, period, that he aided [and] abetted that robbery. The liability, if either one of the two robbers used a gun, is automatic, okay. He doesn't have—he doesn't have to have knowledge they went in there with a gun. The guys that go in there have to have knowledge that they have a gun, that's true. So Mr. Morris and Mr. Skaggs had to know that

which pertinently provides: "A person who is a principal in the commission of the crime charged in count one is armed with a firearm, if any one or more principals of such crime is so armed, regardless of whether such person is personally armed with a firearm."

*The Trial Court Properly Denied Overten's Suppression Motion*

■ Overten contends the trial court erred in denying his defense motion to suppress evidence. He contends it applied the wrong legal standard in ruling on the motion since Officer Kline was outside his territorial jurisdiction when he stopped him at 19th and J Streets in San Diego. Alternatively, he argues even if the trial court applied the correct legal standard there was insufficient indicia of criminal activity to justify a detention. This court granted the People's request to take judicial notice of a signed consent form by which not only the San Diego County Sheriff, but also the San Diego City Police Department Chief, granted Coronado police officers peace officer authority throughout the City and County of San Diego pursuant to section 830.1, subdivision (a)(2). Accordingly, we reject Overten's assertion Officer Kline simply had the authority of a private citizen to effect an arrest beyond the borders of the City of Coronado. And thus, because the facts found by the trial court relating to the detention are undisputed, we direct our attention to, and exercise our independent judgment in resolving, the question of law of whether the detention and resulting search was reasonable within the meaning of the constitution. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

The record[4] shows Officer Kline was at the Coronado Bridge toll plaza in his marked police unit when he received a dispatch informing him two armed Black men wearing dark clothing with hoods had just robbed the La Avenida Motel, approximately five to seven minutes away. The only other highway out of Coronado going to Imperial Beach was being monitored by another officer. Within minutes of the dispatch, Officer Kline saw Overten and a Black man wearing a dark jacket, with a possible hood down, drive by him onto the bridge. Officer Kline followed Overten's car over the bridge. He then saw the heads of two Black males pop up from the front passenger's seat and rear passenger's seat of Overten's car. After they looked at his police car, the two men popped their heads up two or three times and then ducked down out of sight. It was at that point Officer Kline decided to pull

they had a gun on them when they went in. And that's—they had it in their hands, so, I mean, that's not an issue.

"The defendant doesn't have to know that. He is vicariously liable for that arming whether he knows they had a gun or he doesn't know they had a gun. That's just the principle."

[4]On September 2, 1994, this court granted Overten's motion to augment the record on appeal to include the preliminary hearing transcript, which by stipulation was received on the renewed motion before the superior court.

the car over to investigate any possible involvement in the reported armed robbery.

The foregoing persuades us Officer Kline had reasonable cause to stop Overten, believing he and his confederates were involved in recent criminal activity. Law enforcement can reasonably anticipate that a car will be employed to facilitate escape from a crime scene regardless whether one was reported. (*People* v. *Anthony* (1970) 7 Cal.App.3d 751, 761 [86 Cal.Rptr. 767]; see *People* v. *Conway* (1994) 25 Cal.App.4th 385, 390 [30 Cal.Rptr.2d 533].) Given that the robbery occurred just minutes earlier (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]), three Black males matching the general description of the robbers were in a car traveling away from the crime scene on one of two logical escape routes from Coronado (see *People* v. *McCluskey* (1981) 125 Cal.App.3d 220, 225-226 [178 Cal.Rptr. 7]; *People* v. *Fulks* (1980) 110 Cal.App.3d 609, 618-619 [168 Cal.Rptr. 203]), and the two passengers were furtively trying to conceal themselves when they saw Officer Kline's marked police unit (see *People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 818 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]), we conclude Officer Kline at the time he determined to stop the car and detain its occupants had sufficient specific and articulable facts to cause him to suspect the individuals in the car were connected with the reported armed robbery. (See *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

### DISPOSITION

Judgment affirmed.

Kremer, P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 1995.