Filed 2/28/13  P. v. Jacquett CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TOMMY JACQUETT,<br><br>    Defendant and Appellant. | D060103<br><br><br>(Super. Ct. No. SCD231588) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Tommy Jacquett appeals a judgment entered after a jury convicted him of two counts of robbery and found true that, although he was not personally armed with a firearm, he was a principal in the commission of an offense in which a firearm was used. He contends the trial court erroneously denied his motion to suppress evidence because the traffic stop and detention that led officers to evidence against him violated his Fourth Amendment rights.  We reject his arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Early on a morning in December 2010, Officer Gary Hildreth received a call about an armed robbery at a 7-Eleven on Gold Coast Drive in San Diego. The broadcast described the suspects as two Black males and one Black female wearing dark clothing. The suspects were armed with a handgun and were headed eastbound on Gold Coast Drive on foot. Officer Hildreth was also aware of an armed robbery an hour earlier at a Circle K approximately ten miles away. In that robbery, the suspects were described as three Black males wearing dark clothing.

After receiving the information regarding the 7-Eleven robbery, Officer Hildreth drove westbound on Gold Coast Drive toward the robbery site. Although he did not have a vehicle description, "on a hunch, [he] start[ed] scanning vehicles as they were leaving the area and look[ed] for possible suspects." Based on his training and experience, Officer Hildreth believed the suspects had a getaway car.

According to Officer Hildreth, typically there was little to no traffic on Gold Coast Drive early in the morning. The first car Officer Hildreth passed had one female occupant. Four or five minutes after the robbery call, he saw a second car approximately a mile to mile and a half away from the 7-Eleven. In that car, he initially noticed a driver and front passenger, both of whom were Black and wearing dark clothing. After turning on his spotlight and illuminating the interior of the approaching car, Officer Hildreth saw passengers in the back seat who were also Black and wearing dark clothing. The driver and front passenger had surprised looks on their faces.

Officer Hildreth made a u-turn and stopped the vehicle. There were five people in the car, including Jacquett, three other males and one female. They were all wearing dark colored jackets. Officers later seized evidence on the suspects and in the vehicle, including a gun, a phone belonging to a victim of another robbery, several packages of cigarettes of the same type stolen from the Circle K and 7-Eleven,

Prior to trial, Jacquett moved to suppress evidence of the vehicle, its contents and occupants, and any evidence developed by means of the seizure. The trial court denied the motion, noting that it found Officer Hildreth's testimony credible. The court also noted that although Officer Hildreth used the term "hunch," he had a reasonable and articulable suspicion that the passengers of the car were connected to the robbery.

DISCUSSION

Jacquett argues the trial court erred in denying his suppression motion because Officer Hildreth did not have a reasonable suspicion to detain the vehicle and thus, the evidence seized as a result of the stop should have been suppressed. We disagree.

An officer lawfully may stop and briefly detain a person for questioning or limited investigation if he or she has a "reasonable suspicion," based on specific and articulable facts, that (1) some activity relating to a crime has taken place, is occurring or is about to occur, and (2) the person he intends to stop or detain is involved in that activity. (*United States v. Sokolow* (1989) 490 U.S. 1, 7–8.) "The officer's subjective suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' [Citation.] But where a reasonable suspicion of criminal activity

3

exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." ' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)  In reviewing a ruling on a defense motion to suppress evidence, we must defer to the trial court's factual findings where they are supported by substantial evidence, but independently apply the requisite legal standard to the facts presented.  (*People v. Celis* (2004) 33 Cal.4th 667, 679.)

Applying these principles, we agree with the trial court's conclusion that Officer Hildreth had reasonable suspicion to stop the car and detain its occupants, including Jacquett.  Officer Hildreth had information that two Black males and one Black female, all wearing dark clothing, robbed a 7-Eleven.  The officer proceeded westbound on Gold Coast Drive because the suspects fled eastbound on that street.  Although Officer Hildreth was informed the suspects fled on foot, "law enforcement can reasonably anticipate that a car will be employed to facilitate escape from a crime scene regardless of whether one was reported."  (*People v. Overten* (1994) 28 Cal.App.4th 1497, 1505.)  This is exactly what Officer Hildreth anticipated based on his training and experience.

Within minutes of receiving the call, Officer Hildreth spotted the vehicle approximately a mile to mile and a half from the crime scene.  He initially noticed the two individuals in the front seats were Black and wearing dark clothing.  After illuminating the car, Officer Hildreth saw additional passengers in the back seat who also matched the suspects' descriptions.  Given Officer Hildreth's knowledge and observations that the robbery occurred minutes earlier, at least three Black individuals matching the general description of the suspects were in a car travelling away from the crime scene in

4

the direction reported, Gold Coast Drive generally had little to no traffic at that time of day, and the proximity of the 7-Eleven to the location where Officer Hildreth spotted the vehicle, we conclude Officer Hildreth acted on more than a mere "hunch." Although he used that term, considering the totality of the circumstances, he also stated specific and articulable facts which caused him to suspect the individuals in the car were connected to the reported robbery. As the trial court stated, this was simply "good police work." Thus, the trial court did not err in denying Jacquett's suppression motion.

## DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

5