Filed 8/28/13  P. v. Jones CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES ALLEN JONES III,<br><br>    Defendant and Appellant. | F064081<br><br>(Super. Ct. No. BF137356A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Law Office of Gregory H. Mitts and Gregory H. Mitts for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Cornell, Acting P.J., Gomes, J. and Peña, J.

## PROCEDURAL AND FACTUAL HISTORY

Defendant Charles Allen Jones III was charged with arson of forest land (Pen. Code,[1] § 451, subd. (c)), arson of personal property (§ 451, subd. (d)), and making a false report of a felony (§ 148.5). After defendant's motion to suppress evidence was denied by the trial court, defendant pleaded no contest to arson of personal property and was sentenced to three years of probation and 180 days in jail, which the trial court stayed pending this appeal.

Prior to entering his plea, defendant filed a motion to suppress the evidence against him pursuant to section 1538.5, arguing the detention of the vehicle in which defendant was a passenger was unjustified. At the hearing, Kern County Sheriff's Deputy Jeffrey Kelly testified regarding the circumstances of the detention and resulting search that led to the evidence implicating defendant in the arson. On June 23, 2011, between 2:50 and 3:00 a.m., Kelly was informed by a police dispatcher of a "vehicle on fire" off of Round Mountain Road in Kern County. This was significant to him because local law enforcement had received calls from the area regarding stolen cars that were burned for insurance fraud purposes "all the time." The dispatch further indicated that shots may have been fired and that two vehicles were seen leaving the area, including a "dark-colored compact car."

The location of the burning vehicle was rural, composed primarily of oil fields and dirt lots, and can only be accessed through one road and exited via only two routes. While in route to the scene of the burning car approximately one minute after receiving the dispatch information, Kelly spotted a 2005 Chevrolet Cobalt, which he described as a smaller, silver four-door sedan, traveling away from the burning car's location. Kelly testified the Cobalt was the first vehicle he witnessed in the area and he felt it closely matched the description of the car seen leaving the scene of the burning vehicle because

___

[1]All further references are to the Penal Code unless otherwise indicated.

due to the dark conditions at 3:00 a.m., the car appeared to be a dark-colored compact car. Based on the description of the vehicle, the rural character of the area, the time of day, the relative inaccessibility of the area, the fact that Kelly received the dispatch information less than one minute before, and the fact that the Cobalt appeared to be traveling away from the location of the burning vehicle, Kelly decided to stop the car to further investigate its passenger's possible involvement in the reported burning vehicle. When questioned by the prosecution regarding possible vehicle code violations, Kelly further testified that he also noticed one of the Cobalt's headlights was burned out.

The Cobalt contained four passengers, including defendant. Kelly approached the car and asked "where [the passengers] were coming from, what were they doing." The passengers each gave a different response. At that point, Kelly used his flashlight to illuminate the interior of the car, which Kelly does as a matter of course as a safety precaution. He noticed that all occupants had filthy feet, as if they had been out in the field, something Kelly perceived as unusual given the time of day. The passengers' dirty feet and disparate answers to his questions further aroused Kelly's suspicion that the passengers were involved in the suspicious circumstance burning vehicle reported only minutes before. Kelly received consent from the Cobalt's driver to search the trunk, where Kelly found a gas can that smelled as if it were recently used. Contemporaneously, officers were informed that the burning vehicle was registered to defendant. Defendant was subsequently detained and later told officers he burned the vehicle.

The trial court denied defendant's motion, reasoning the officer had reasonable suspicion to stop the car. The court explained that, when viewed as a whole, the remote location of the burning vehicle, the inaccessibility of the road, the similarities between the witness's description of vehicles leaving the scene and the Cobalt, the time of day, and the fact that Kelly spotted the Cobalt traveling away from the location of the burning vehicle approximately one minute after he received the dispatch information, provided

3.

the deputy with reasonable suspicion that the Cobalt's passengers were involved in the possible arson of the vehicle. Therefore, the stop was lawful.

## DISCUSSION

On appeal, defendant challenges only the legality of the traffic stop. Accordingly, we limit our consideration to that issue. In reviewing a trial court's ruling on a motion to suppress evidence, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found." (*People v. Woods* (1999) 21 Cal.4th 668, 673-674.) The legality of the stop is assessed under the standard set forth in the federal Constitution's Fourth Amendment. (*People v. Lomax* (2010) 49 Cal.4th 530, 564, fn. 11.) The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its protections extend to investigatory stops of vehicles. (*United States v. Arvizu* (2002) 534 U.S. 266, 273 (*Arvizu*).) The Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion that criminal activity may be afoot. (*Ibid.*)

*In re Tony C.* (1978) 21 Cal.3d 888, 893, superseded by statute on other grounds as stated in *In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, footnote 2, sets forth the specific test to be applied in determining the validity of an investigative stop:

> "[T]he circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. [T]he facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience …, to suspect the same criminal activity and the same involvement by the person in question."

Initially, we note the first prong was met in this case, and the parties do not appear to argue otherwise. Kelly testified he had received a police dispatch regarding a vehicle on fire in the early morning hours in a location known for the arson of stolen vehicles. Further, he had information that shots were possibly fired in the area. These facts led to

4.

the reasonable suspicion that a crime had occurred. (*People v. Glover* (1979) 93 Cal.App.3d 376, 381 (*Glover*); *People v. McCluskey* (1981) 125 Cal.App.3d 220, 226.) Defendant's argument is not otherwise; rather, he contends the facts do not demonstrate a reasonable suspicion the Cobalt was involved in the possible arson.

In support of his claim, he relies exclusively upon *Glover*. *Glover*, however, is inapposite. There, a motel robbery prompted authorities to set up roadblocks at each of the three possible vehicular escape routes. (*Glover*, *supra*, 93 Cal.App.3d at p. 379) A description of the suspect's person was provided by eyewitnesses, however they had no information regarding whether the suspect fled in a vehicle or the suspect's direction of travel. (*Id*. at pp. 381-382.) The defendant's vehicle arrived at the roadblock and a subsequent search led to the discovery of incriminating evidence related to the robbery. (*Ibid*.) The officers "did not articulate any belief that the vehicle was connected to the crime in any way." (*Id*. at p. 382.) Rather, the officers had simply decided to stop "'every vehicle that came down the road.'" (*Ibid*., italics omitted.)

The only evidence provided to support a reasonable suspicion to stop the vehicle was the rural nature of the area and the late hour during which the vehicle was traveling. The court found this to be an insufficient basis to form the required reasonable suspicion because the facts known to the officers and observable with respect to the defendant's vehicle prior to the stop gave no indication that the vehicle had anything to do with the robbery. (*Glover*, *supra*, 93 Cal.App.3d at p. 381-382.) However, the court did expressly note that more detailed proof regarding the area's remoteness, sparse population, and normal incidences of traffic could have established the requisite reasonableness of the detaining officer's suspicion that a vehicle traveling down the road was connected to the crime. (*Id*. at p. 382, fn. 2.)

Unlike the officers in *Glover*, Kelly stopped the Cobalt based on his reasonable suspicion that the car was involved in the possible arson. He considered not only the rural nature of the area, the inaccessibility of Round Mountain Road, and the time of day,

but also the Cobalt's likeness to the description provided by the witness and the fact that the Cobalt was traveling away from the scene of the incident less than one minute after Kelly received the dispatch information regarding the possible arson. Further, unlike the facts linking the defendant to the robbery in *Glover*, the facts leading to Kelly's suspicion were within his knowledge prior to making the stop and not produced as a result of an arbitrary stop. These details make *Glover* distinguishable from the present case.

Defendant further argues that each individual fact cited by Kelly as the basis for the stop reflects innocent behavior and therefore provides an insufficient basis for reasonable suspicion of criminal activity. Defendant's argument is without merit. Rather than reviewing each fact and circumstance individually, reviewing courts must consider the "'totality of the circumstances'" of each case in determining whether the facts of a case provided the detaining officer a "'particularized and objective basis'" for making the stop. (*Arvizu*, *supra*, 534 U.S. at p. 273.) The suggestion that some or all of those factors, taken alone, may also be consistent with innocent conduct does not lessen a determination that reasonable suspicion exists. (*Id*. at p. 277.) Rather, the issue is whether, taken as a whole, and in conjunction with an officer's specialized training and familiarity with the customs of the area's inhabitants, the factors may still suffice to provide a particularized and objective basis for the detention, making the stop reasonable within the meaning of the Fourth Amendment. (*Arvizu*, at pp. 274-278.)

The area where Kelly stopped the Cobalt is relatively inaccessible and composed mostly of oil fields and dirt lots, making traffic on Round Mountain Road a rarity, especially on a Thursday at 3:00 a.m. Less than a minute after receiving a dispatch of a suspicious circumstance vehicle on fire, Kelly noticed a car resembling a "dark-colored compact car" driving away from where the burning vehicle was located. It was approximately 3:00 a.m. and in Kelly's opinion the Cobalt's silver paint would look dark at that hour. Kelly testified that vehicles were burned for the purpose of insurance fraud in this area on a frequent basis. When viewed in combination, these factors represent

6.

objective, specific, and articulable facts and circumstances within Kelly's knowledge at the time he made the stop that would cause a reasonable officer in Kelly's position—drawing from like experience—to reasonably suspect the Cobalt was involved in the suspicious activity reported minutes before, thus making Kelly's stop lawful within the meaning of the Fourth Amendment.[2]

Defendant further claims the description of the car leaving the scene of the crime as a "dark-colored compact car" was too vague to form part of the basis for Kelly's reasonable suspicion and therefore it should not be relied upon by this court in determining whether the stop was reasonable. Defendant's claim is misplaced. First, we note, defendant offers no authority in support of his contention that the vehicle's description was too vague as a matter of law. Second, defendant ignores the fact that limited facts within a detaining officer's knowledge can serve as an objectively reasonable basis for a stop where the officer is acting on very current information of criminal activity. (*People v. Conway* (1994) 25 Cal.App.4th 385, 390 (*Conway*).)

On this point, *Conway* is instructive. There an investigatory stop was found permissible despite that the only facts within the knowledge of the detaining officer were the location of a burglary in progress and that two suspects were seen leaving the victim's garage; a car was not mentioned nor a description of the suspects provided. (*Conway*, *supra*, 25 Cal.App.4th at p. 388.) Less than two minutes after receiving the dispatch information, the officer stopped a vehicle he suspected was connected to the reported burglary because it was the only vehicle on the street at 3:00 a.m. and it was leaving the immediate area of the reported burglary. (*Ibid*.) The court held that the car being the only vehicle on the street at that time and the vehicle's direction of travel provided an

---

[2]Having established the stop was lawful, it follows that defendant in this case was also lawfully seized for purposes of the Fourth Amendment. (*Brendlin v. California* (2007) 551 U.S. 249 [everyone in a vehicle pulled over is properly seized for purposes of Fourth Amendment for duration of the stop]).

objectively reasonable basis for the officer's suspicion because the officer was acting on information received less than two minutes before the stop. (*Id*. at p. 390.)

Other cases are in accord. *People v. Lazanis* (1989) 209 Cal.App.3d 49, 54, found an investigatory stop justified where the evidence established the officer received a broadcast of a burglary in progress, with a brief description of a small car and multiple passengers, and the car was spotted in the area headed away from the burglary shortly after the broadcast. Notably, the fact that the car was misdescribed as a Toyota instead of a Mazda did not lessen the reasonableness of the stop. (*Ibid*.) In *People v. Jones* (1981) 126 Cal.App.3d 308, 312-313, officers received a broadcast of a recent assault with a deadly weapon emanating from a hospital. The car was described as a brown 1965 Oldsmobile or Pontiac sedan with a license plate number of 276ABA occupied by two Black males. The officer spotted two Black males in a tan over brown 1970 Oldsmobile sedan with license plate 276AFB in the vicinity about four minutes after the broadcast occurred. (*Id*. at p. 313.) Despite the discrepancies in the description of the vehicle, the court found the stop justified due to the similarities of the descriptions, the recency of the offense, and the fact that the car was spotted in the vicinity of the incident traveling away from the scene of the crime. (*Id*. at p. 314.) In *People v. McCluskey*, *supra*, 125 Cal.App.3d 220, the court found reasonable suspicion supported an investigatory stop where officers spotted a vehicle in the area of a robbery that had occurred only minutes earlier. The officer had no information the suspect fled in a vehicle, however, the vehicle was the only one in the area, it was 1:00 a.m., and when the officer passed the car the passenger resembled the description of the suspect. (*Id*. at p. 226.)

Reviewing the totality of the circumstances in light of the above cases it is clear that Kelly's detention of the Cobalt was based upon reasonable suspicion that the occupants were involved in the reported arson. Similar to the officers in *Conway*, *Lazanis*, *Jones*, and *McCluskey*, Kelly relied on information related to very recent criminal activity. Additionally, the Cobalt's direction of travel away from the scene of

the crime, within minutes of the reported arson, the low incidence of traffic at the time on Round Mountain Road, the description of the vehicle leaving the scene, and the Cobalt's similarity to the described vehicle, all led to the objectively reasonable conclusion that the car was involved in possible criminal activity. In view of the totality of the circumstances available to Kelly at the time of the stop and his reliance on very current information, we affirm the trial court's denial of defendant's motion to suppress evidence.

## DISPOSITION

The judgment is affirmed.