[No. C015371. Third Dist. May 27, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE CONWAY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

J. Robert Spangler, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SCOTLAND, J.—Defendant Wayne Conway was convicted by jury of first degree burglary (Pen. Code, § 459). The trial court found true the allegations that he had been convicted previously of two serious felonies (Pen. Code, § 667, subd. (a)) and had served prison terms for five felony convictions (Pen. Code, § 667.5, subd. (b)). Defendant was sentenced to a prison term of 21 years for the burglary and enhancements.

In the published portion of this opinion, we reject defendant's claim that his detention "was predicated upon nothing more than a 'hunch' " and, thus, the trial court should have granted his motion to suppress evidence as the product of an illegal detention. As we shall explain, the circumstances presented to the patrol officer responding to the report of a burglary in progress justified a vehicle stop and detention of defendant and his companion for the purpose of investigating their possible involvement in the burglary.

In the unpublished part of our opinion, we disagree with defendant's contention that the trial court erred in imposing a $4,200 restitution fine. Accordingly, we shall affirm the judgment.

DISCUSSION

I

David McBride lives on Sawtelle Way in Sacramento County. Sawtelle is an "L"-shaped street which is connected to the main thoroughfare, La Riviera Drive, by Waterton Way.

On October 15, 1992, McBride got up shortly before 3 a.m. to go to work. He looked out the bedroom window and saw his garage door was open. Two men were leaving the garage; one was dark and one was White, and each wore distinctive clothing. They were carrying tools and fishing poles. McBride woke up his wife, told her to call the police, and said he was going in pursuit of the burglars. In the front yard of a home four houses away, McBride found his tools.

After awakening his neighbor and telling him about the stolen items on the front lawn, McBride ran to the turn in Sawtelle Way and observed a small Chevrolet drive by. McBride recognized the men inside the car. They were the culprits who had burglarized his garage. McBride yelled for the car to stop, but it kept going. When the car got to the corner of Sawtelle and Waterton, it was pursued by a patrol car. McBride ran to La Riviera Drive and saw the Chevrolet had been stopped by a patrol officer. McBride told the officer not to let the occupants go because they had taken property from his garage. McBride observed his radio/cassette player in the back of the Chevrolet.

Deputy Sheriff Donald Judd was on patrol about a quarter of a mile away at Folsom Boulevard and La Riviera Drive when he received a dispatch of a burglary in progress on Sawtelle Way. Judd was familiar with the area as he patrolled it several times each night. He proceeded down La Riviera Drive to Waterton Way. As he was turning onto Waterton, he saw a brown compact car coming off Sawtelle onto Waterton. There was no other traffic, and he did not see anyone on foot in the area. Inside the brown car were an older Black male and a young White male. Officer Judd made a U-turn and followed the vehicle, which was in poor condition and sputtered as it went. When it crossed La Riviera Drive, Judd activated his lights. The car stopped, and defendant and his companion got out quickly.

The stop occurred less than two minutes from the time Officer Judd had received the burglary dispatch. The dispatch had not mentioned a car and had not given any description of the suspects. All Judd knew was that two suspects had been seen in a garage. He pulled over defendant's vehicle because it was the only car on the street and was leaving the immediate area of a reported burglary. Judd intended to identify the occupants of the car and have the burglary victim look at them.

█ To justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts which, viewed objectively, would cause a reasonable officer to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person the officer intends to stop or detain is involved in that activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Lloyd* (1992) 4 Cal.App.4th 724, 733 [6 Cal.Rptr.2d 105].) This reasonable suspicion requirement is measured by an objective standard, not by the particular officer's subjective state of mind at the time of the stop or detention. (*Graham* v. *Connor* (1989) 490 U.S. 386, 397 [104 L.Ed.2d 443, 456, 109 S.Ct. 1865] [". . . the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . An officer's evil intentions will not make a Fourth Amendment

violation out of an objectively reasonable [action]; nor will an officer's good intentions make an objectively unreasonable [act] constitutional."]; *Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717] [". . . the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."].) Accordingly, the circumstances known or apparent to the officer must be such as would cause a reasonable law enforcement officer in a like position, drawing when appropriate on his or her training and experience, to suspect that criminal activity has occurred, is occurring, or is about to occur and that the person to be stopped or detained is involved in the activity. (*In re Tony C.*, *supra*, 21 Cal.3d at p. 893; *People* v. *Lloyd*, *supra*, 4 Cal.App.4th at p. 733.) The corollary to this rule is that an investigative stop or detention predicated on circumstances which, when viewed objectively, support a mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in good faith. (*Ibid.*)

■ Defendant contends he was detained illegally by Officer Judd. According to defendant, Judd acted upon a mere hunch and lacked facts which would give rise to a reasonable suspicion that defendant had been involved in any criminal activity. He claims the facts of this case are similar to those of *Tony C.*, *supra.*

In *Tony C.*, an officer stopped two Black youths walking in a residential area one Tuesday around noon. He knew that several burglaries had occurred recently in the area and that the suspects were three male Blacks. The California Supreme Court held the detention was unlawful, concluding: there was nothing inherently suspicious about two school-age children walking in a residential area during the noon hour on a school day; the reports of burglaries in the area were not sufficient to support the intrusion; the description of the burglary suspects was too vague to cast suspicion on Tony and his companion, and nothing in the behavior of Tony and his companion suggested they might be involved in criminal activity; hence, viewed alone or together, the circumstances did not support a reasonable suspicion that the two youths were involved in any criminal activity. (21 Cal.3d at pp. 897-898.)

We find this case more akin to *People* v. *Lloyd*, *supra*, 4 Cal.App.4th 724. In *Lloyd*, the appellant was found at 4 a.m. next to a business in which a silent alarm had just gone off. He began to walk away when the officers approached. The court held that, on those facts, the officers acted reasonably in stopping and detaining the appellant as a possible burglary suspect. (*Id.*, at pp. 733-734.)

Here, Officer Judd had no description of the suspects and did not know if they had a car. However, the information he received about criminal activity was very current. Less than two minutes after receiving the report of a burglary in progress, he saw a car leaving the area of the reported burglary. The time was approximately 3 a.m., and the officer saw no one else in the area. Under the circumstances, it was objectively reasonable for the officer to suspect the car's occupants were involved in the burglary. (Cf. *People v. Lloyd, supra,* 4 Cal.App.4th at pp. 733-734; *People v. McCluskey* (1981) 125 Cal.App.3d 220, 226 [178 Cal.Rptr. 7].)

We recognize that driving in a residential area early in the morning is consistent with lawful activity. "But the possibility that the circumstances are consistent with lawful activity does not render a detention invalid, where the circumstances also raise a reasonable suspicion of criminal activity. The public rightfully expects a police officer to inquire into such circumstances; indeed the principal function of the investigative stop is to resolve that ambiguity." (*People v. Dolliver* (1986) 181 Cal.App.3d 49, 56 [225 Cal.Rptr. 920].)

Since Officer Judd acted in an objectively reasonable manner in stopping and detaining defendant for investigation, the trial court properly denied the motion to suppress evidence.

## II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 7, 1994.

---

*See footnote, *ante,* page 385.