Filed 3/20/15  P. v. Vasquez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073472 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F05952) |
| v. | |
| PHILLIP FERNANDO VASQUEZ et al., | |
| Defendants and Appellants. | |

After their suppression motion was denied, defendants Phillip Fernando Vasquez and Richard Salvadore Velasquez entered pleas of no contest to participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)—count four) in exchange for stipulated sentences of three years and dismissal of the remaining counts.

Sentenced accordingly, both defendants appeal.  They raise only one and the same issue.  They contend the trial court erroneously denied their suppression motion.  We disagree and will affirm the judgments.

# FACTS[1]

About 6:24 p.m. on August 24, 2011, Sacramento Police Officer Roy Lacy and his partner Officer Wallace were dispatched to a gas station on Franklin Boulevard, a high crime area, on a report at 6:21 p.m. of a disturbance involving two Black women and a Black man.  On the way to the station, the officers learned that the complainant, whose race was unknown, had armed himself with a baseball bat and had followed the people outside, leaving the phone at the station store off the hook and no one responding to the dispatcher, who heard yelling in the background.

When Officer Lacy drove up to the gas station at 6:27 p.m., he did not know whether the complainant was outside the store or whether other people were involved. The officer parked his patrol car on the north side of the lot, got out, and had started toward the front door of the gas station store, located 12 to 15 feet away, when an Hispanic man walked out of the front door.  No one else came out of the store.  The officer did not know whether the Hispanic man was involved in the disturbance and asked him whether he knew anything about what was happening at the station.  The Hispanic man, later identified as defendant Velasquez, did not stop, threw his hands up, responded, "I don't have anything to do with what's going on here at the store," and started walking quickly toward a car parked at the pumps.  Officer Lacy followed defendant Velasquez; as the officer got closer, defendant Velasquez walked faster, and when he got to the rear bumper of the car, he ran (quickened his pace) to the driver's door, got inside, closed the door, and reached for the ignition.  Officer Lacy opened the driver's door, grabbed defendant Velasquez's left arm, and pulled him out of the car, detaining him in handcuffs.  A gun was found in the waistband of defendant Velasquez's pants.  Officer Wallace had drawn his weapon and was holding the other two occupants

---

[1] The facts are taken from the reporter's transcript of the hearing on defendants' suppression motion.  Only Officer Roy Lacy testified.

of the car, including defendant Vasquez, at gunpoint. Other officers arrived on the scene and assisted Officer Lacy in detaining defendant Velasquez. Officer Lacy removed the rear passenger, defendant Vasquez, from the car and detained him for officer safety reasons. More guns were found in defendants' car.

Officer Lacy explained that defendant Velasquez's oral response and physical actions were consistent with someone who might have been involved in the disturbance and had information about it, since Officer Lacy did not know everyone who had been involved. And when defendant Velasquez ran to the driver's door of the car and there were other occupants in the vehicle, Officer Lacy was concerned about officer safety and believed "something else was afoot."[2]

On cross-examination, Officer Lacy admitted that he did not approach the Black man who was at the pumps when the officers first arrived. Officer Lacy explained that he focused on the front door of the store where the disturbance began and where there was an open telephone land line inside, and defendant Velasquez walked out. When he detained defendant Velasquez, Officer Lacy admitted that he had no suspicion that

---

[2] A no-audio surveillance video from the gas station was played and Officer Lacy described what was seen. It is of poor quality and a bad camera angle. It does not appear to show the front entrance to the gas station store but shows the gas pumps. At 18:27:25, the time on the DVD, Officer Lacy's patrol car enters the gas station. The prosecutor stated he did not know whether the DVD time had been "calibrated" with the time of the dispatch. At 18:27:33 the patrol car parks, both doors open, and a couple of seconds later both officers get out of the car. Officer Lacy stated that at 18:27:43 he asked defendant Velasquez the one question. Defendant Velasquez does not enter the picture until he's at the rear of his car, about 18:27:49 to 18:27:51. After 18:27:53 the officer described defendant Velasquez's pace from the rear bumper to the driver's door as a "full run" of the "[l]ast few steps." Officer Lacy stated that he ran as well. The prosecutor in his questioning referred to defendant Velasquez as "quickening his step, and is actually running or moving quickly around that car." On cross-examination, Officer Lacy was asked for his definition of running and responded that it was "[f]aster than walking."

3

defendant Vasquez, an occupant in the car at the gas pump, was involved in any criminal activity.

Defense counsel for defendant Velasquez questioned Officer Lacy about the CAD (computer-aided dispatch) log for the incident. The log reflected that dispatch received a call at 6:28 p.m. from the "owner," who reported that the subjects were "gone on arrival" and there was no longer a problem. Officer Lacy explained that prior to exiting his patrol car, he did not receive that "teletype to [their] MDT's [mobile data terminal] in [their] car." Officer Lacy, who was driving, did not view the MDT and did not recall whether his partner, Officer Wallace, gave him any updates as they were en route to the scene. Officer Lacy admitted that when he arrived on the scene, the information he had was that the two Black females and the one Black male had left the store and were outside, and the complainant had left the store with a baseball bat but that the phone in the store was off the hook. Officer Lacy stated that when he arrived he was unaware whether the disturbance was inside or outside the store and of who else might be involved.

Defense counsel for defendant Vasquez argued the officer had information that the suspects involved in the disturbance had already left the store, so defendant Velasquez should not have been detained. Defense counsel for defendant Velasquez argued that his "flight" from the officer was "provoked." He also argued that the officer ignored the person who matched the suspect's race and focused instead on the front door and the Hispanic male (defendant Velasquez).

The trial court concluded that when Officer Lacy grabbed defendant Velasquez's arm and removed him from the car, defendant Velasquez had been seized. In denying the suppression motion, the court found that the seizure for purposes of further investigation was justified by a reasonable suspicion due to defendant Velasquez's oral and physical responses to the officer's query whether he knew anything about the disturbance in the store. No additional issue was argued or decided concerning defendant Vasquez, who had been inside the car.

4

## DISCUSSION

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133-1134.)

An investigative stop or detention of an individual is permissible under the Fourth Amendment when the officer has a reasonable suspicion that criminal activity may be afoot. (*Terry v. Ohio* (1968) 392 U.S. 1, 21, 30 [20 L.Ed.2d 889, 906, 911]; *People v. Conway* (1994) 25 Cal.App.4th 385, 388-389.) Reasonable suspicion is an objective standard, not the "particular officer's subjective state of mind at the time of the stop or detention." (*Conway*, at p. 388; see also *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 147 (*Letner*) [the officer's subjective beliefs were irrelevant].) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).) "[T]he evidence relied on by police officers to justify the seizure of a person 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' [Citation.]" (*Id*. at p. 240.) Informed by commonsense judgments and inferences about human behavior, "the reasonable suspicion standard of *Terry v. Ohio* . . . is not a particularly demanding one . . . ." (*Letner*, *supra*, 50 Cal.4th at p. 146.)

There is no dispute that defendants were detained when Officer Lacy grabbed defendant Velasquez's arm and removed him from the car while Officer Wallace held the other occupants, including defendant Vasquez, at gunpoint and then ordered them out of the car for officer safety reasons. Defendant Vasquez challenges the detention of

5

defendant Velasquez. The People agree that defendant Vasquez can do so because he "was detained to ensure officer safety as the passenger of a car where the driver, [defendant] Velasquez, was seized in an investigative detention." The People argue that the detention of defendant Velasquez was reasonable because defendant Velasquez's evasive answer and flight to his car in a high crime area during the officer's investigation of a disturbance call at the station provided reasonable suspicion of criminal activity. We agree.

In *Souza*, *supra*, 9 Cal.4th 224, Officer Stackhouse was "investigating what he thought to be an auto burglary in progress." (*Id*. at p. 241.) *Souza* held that the totality of the circumstances justified the officer's temporary detention of the defendant. *Souza* summarized the facts as follows: "[I]n this case the presence on the sidewalk at 3 a.m. of two people who appeared to be talking to the occupants of a car parked in total darkness in an area that Officer Stackhouse described as a 'high crime area,' coupled with the evasive conduct by the occupants and defendant's sudden flight when Officer Stackhouse directed his patrol car's spotlight toward the group, justified a brief, investigative detention to enable the officer *to resolve the ambiguity in the situation and to find out whether the activity was in fact legal or illegal*. [Citation.]" (*Id*. at p. 242, italics added.)

Here, the officer was dispatched to the scene of a disturbance at a gas station store on Franklin Boulevard, a high crime area. "An area's reputation for criminal activity is an appropriate consideration in assessing whether an investigative detention is reasonable under the Fourth Amendment." (*Souza*, *supra*, 9 Cal.4th at p. 240.)

The officer asked defendant Velasquez, who was leaving the gas station store, a single question: whether he knew anything about the disturbance at the station store. That defendant Velasquez did not match the suspects' descriptions is of no importance under the facts here. Officer Lacy testified that when he arrived, he did not know how many people were involved in the disturbance, the complainant's race, or whether the disturbance was inside or outside the store, noting there was an open land line inside the

6

store. Officer Lacy was entitled to ask defendant Velasquez a simple investigatory question. An officer does not violate the Fourth Amendment by merely approaching an individual in a public place and asking him a question. (*Souza*, *supra*, 9 Cal.4th at p. 234.) "[T]hat a person approached by police for questioning may decline to answer the questions and 'may go on his way,' does not imply that the *manner* in which a person avoids police contact cannot be considered by police officers in the field or by courts assessing reasonable cause for briefly detaining the person." (*Ibid*.)

Defendant Velasquez engaged in evasive behavior. Evasive behavior is another pertinent consideration in determining reasonable suspicion. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124-125 [145 L.Ed.2d 570, 576-577].) Defendant Velasquez did not respond to the officer's question with a simple "no." Instead, defendant Velasquez did not stop walking, threw up his hands, and said he did not "have anything to do with what's going on here at the store." He quickened his pace toward his car after being asked about the disturbance at the station. His answer suggested the disturbance had returned to or was still inside the store. And despite defendant Velasquez's claim that he did not have anything to do with it, a reasonable officer might suspect defendant Velasquez had been involved in the disturbance at the station, having just left the store and quickening his pace after having been asked about it. "[A] trained police officer could draw inferences 'that might well elude an untrained person.' [Citation.]" (*Souza*, *supra*, 9 Cal.4th at p. 237.)

When the officer started to follow, defendant Velasquez "ran," or quickened his pace, the last few steps around the rear bumper, entered and closed the driver's door, and reached for the ignition. Flight from an approaching officer is another factor to consider along with other factors that give meaning to the act of flight in determining reasonable suspicion. (*Souza*, *supra*, 9 Cal.4th at pp. 239, 242.)

There was " 'some objective manifestation' " that defendant Velasquez was " 'engaged in criminal activity.' [Citation.]" (*Souza*, *supra*, 9 Cal.4th at p. 238.) The

7

officer was entitled to conduct an investigative detention in order to resolve the ambiguity in the situation and to determine whether defendant was or was not involved in the disturbance at the station.  (*Id*. at p. 242.)

Because the totality of the circumstances warranted the detention of defendant Velasquez for investigation related to the disturbance call, the trial court properly denied defendants' suppression motion.

## DISPOSITION

The judgments are affirmed.


                                                            RAYE           , P. J.


We concur:


          BLEASE        , J.


           HULL          , J.