Filed 1/20/16  In re Roy R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ROY R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROY R., <br><br> Defendant and Appellant. | F070730 <br><br> (Super. Ct. No. 14CEJ600522-1) <br><br><br> **OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from an order of the Superior Court of Fresno County.  Kimberly Nystrom-Geist, Judge.

Holly Jean Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Gomes, J. and Detjen, J.

Appellant Roy R. admitted the crime of possession of marijuana for sale, after his motion to suppress was denied. He was placed on deferred entry of judgment. He appeals, contending the juvenile court erred in denying his motion to suppress. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On July 16, 2014, the Fresno County District Attorney filed a juvenile wardship petition pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging that Roy had committed the crime of possession of marijuana for sale, a felony. On August 12, 2014, Roy admitted the count 1 allegation for the purpose of determining his eligibility for deferred entry of judgment.

On September 23, 2014, the juvenile court granted Roy's request to set aside his admission. Thereafter, on November 3, 2014, Roy filed a motion to suppress evidence. The People filed opposition to the motion.

An evidentiary hearing on the motion was conducted on January 5, 2015. Reedley Police Department Officer Michael Couto testified he was the school resource officer for all schools in the city in 2014. As such, he was responsible for investigation of all juvenile-related crimes. In January 2014, Couto had made contact with Roy when he cited Roy for possession of marijuana. Couto was familiar with Roy's parents.

On May 13, 2014,[1] Couto had received information indicating that Roy was distributing marijuana or using marijuana with other juveniles. Couto commenced his investigation by researching Roy. He learned that Roy was then 15 years old and attended Dunlap Leadership Academy, a charter school in Kings Canyon Unified School District. Roy's parents were separated and maintained separate residences.

---

[1] Undesignated references to dates are to 2014.

Dunlap is primarily an internet school that allows students to complete school work from home via the internet. Students are supposed to remain in their residences during school hours, unless accompanied by a parent or an adult approved by the parent.

On Wednesday, May 14, Couto went to East Early Avenue in Reedley, which was the location where information indicated Roy was distributing and/or using marijuana with other juveniles. He knocked on the door for several minutes and left when no one answered. Couto then went to a large apartment complex on East Springfield, where Roy's mother Marie lived.

When Couto pulled up to the address on East Springfield around 9:15 a.m. on May 14, he saw two males, one of whom was Roy, standing in a flower bed next to a wall approximately three feet high. Couto did not recognize the other male, but noted he was wearing clothing that was predominantly red in color, the color worn by the Norteno gang. Roy's companion also had several visible tattoos that Couto couldn't distinguish at a distance, but Couto thought the companion "appeared … northern-affiliated."

The flower bed was located on the furthest southeast corner of the complex, about 12 feet from the sidewalk on Springfield Avenue, and about 200 feet from Marie's apartment. Springfield Avenue is the north border of the territory covered by a gang injunction against the Barrio Eastside Reedley Nortenos. The injunction was in place because of violent crimes in the area. The apartment complex was covered by the injunction.

Couto stepped out of his vehicle to make contact with Roy because, at a minimum, Roy appeared to be in violation of Reedley's daytime curfew for juveniles. Reedley Municipal Code 5-2-1(b)(1) requires that juveniles between the ages of six and eighteen must be in school during the school day, or in their residence with a parent, or with a parent or another adult who has legal care or custody of the minor. As the school resource officer, every time Couto contacted a juvenile during school hours the first thing he did was to investigate whether they were in violation of the daytime curfew. As soon

3.

as Couto stepped out of his patrol car, he noticed that both Roy and the other male, later determined to be John Perez, became nervous and fidgety. According to Couto, "[t]hey kept looking at each other, then looking at me, then looking at each other, and they appeared to be nervous to me." Perez "started looking around" and appeared to Couto as though he was "looking for an escape route to run."

Couto told Roy and Perez that he wanted to speak with them. Because Couto thought Perez might be affiliated with a Norteno gang, based on his clothing, he told Roy and Perez he was going to check them for weapons as a safety precaution. While Couto pat searched Roy, Officer Jarrett pat searched Perez for weapons, with negative results.

As Couto was patting Roy, he felt a large Mason jar in a cargo pocket of Roy's pants. Couto knew the jar was a common container used to keep marijuana and he asked Roy if the jar contained marijuana; Roy said it did. Couto continued the pat search of Roy and felt "a small plastic baggy with a bump" in another pocket. Roy indicated the baggie also contained marijuana. Couto asked Roy what he was doing in the flower bed during the school day and Roy indicated he was waiting for someone because he planned to sell the baggie of marijuana to them for ten dollars.

Perez testified that he knew Roy's mother, Marie, and was visiting her on May 14. Perez was over the age of 18 years that day. At one point, Perez walked outside to the flower bed with Roy; Perez was waiting for a ride and Roy was planning to walk to his father's residence. Perez claimed that his shoes were the only red he was wearing that day.

Marie testified that Roy was with her that day, as he is on all school days. Roy is home schooled through Dunlap Charter. That day, she and Roy were about to leave her apartment to retrieve some school work from Roy's father's apartment. As Roy was waiting outside for her, he was arrested.

At the conclusion of the evidentiary portion of the hearing, the juvenile court stated it was denying the motion. The juvenile court found that Couto had articulated

4.

specific reasons why, for officer safety, a patdown search was conducted. The juvenile court noted that Couto was in a zone covered by a gang injunction, contacting an unknown person who was wearing gang colors, and also contacting Roy, who had prior contacts with law enforcement, with both subjects acting nervous. The juvenile court also noted that from an objective stand point, Roy appeared to be truant. The juvenile court concluded the pat down was justified for officer safety.

After the juvenile court denied the motion to suppress, Roy admitted the sole allegation of the wardship petition. He was placed on deferred entry of judgment. A notice of appeal was filed on January 5, 2015.

## DISCUSSION

The sole contention on appeal is that the juvenile court erred in denying the motion to suppress. Specifically, Roy contends Couto lacked probable cause to arrest him for truancy, and therefore the pat down was a violation of his Fourth Amendment rights. Roy is mistaken.

### *Standard of Review*

In reviewing the denial of a suppression motion, "the power to judge the credibility of witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal, all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." (*In re Arturo D.* (2002) 27 Cal.4th 60, 77.) "In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).)

### *Governing Principles*

A "brief investigative stop" of a person, commonly referred to as a detention, is a seizure within the meaning of the Fourth Amendment. (*People v. Souza* (1994) 9 Cal.4th 224, 229 (*Souza*).) To justify a detention, the circumstances known or apparent to the

officer must include specific and articulable facts which, viewed objectively, would cause a reasonable officer to suspect that (1) some activity relating to crime has taken place, is taking place, or is about to occur; and (2) the person the officer intends to detain is involved in the activity. This is the "reasonable suspicion" requirement, and is measured by an objective standard, not the particular officer's subjective state of mind at the time of the detention. (*People v. Conway* (1994) 25 Cal.App.4th 385, 388.)

This reasonable suspicion standard requires only a "minimal level of objective justification." (*Illinois v. Wardlow* (2000) 490 U.S. 1, 7-8.) When, from an objective standpoint, circumstances give rise to a reasonable suspicion, an investigation is warranted; that circumstances might also be consistent with innocent activity does not warrant a different result. (*Souza*, *supra*, 9 Cal.4th at p. 233.) "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of [police] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal." (*Ibid.*)

The California Supreme Court addressed truancy arrests in the context of detentions under the Fourth Amendment in *In re James D.* (1987) 43 Cal.3d 903 (*James D.*). In *James D.,* the minor, who appeared to be about 15 or 16 years of age, was on the sidewalk with a book bag at 10:30 a.m. when he was stopped by an officer. (*Id.* at p. 908.) While being questioned, the minor "suddenly shoved his hand beneath his jacket," which prompted the officer to do a pat search for weapons. The pat search uncovered a controlled substance, LSD. (*Ibid.*)

After his arrest, the minor in *James D.* moved to suppress evidence as the product of an unlawful detention. (*James D.*, *supra*, 43 Cal.3d at p. 908.) The California Supreme Court held that detentions based upon a reasonable suspicion of truancy were appropriate in light of the state's interest in enforcing compulsory education laws and the minimal intrusions caused by such detentions. (*Id.* at p. 915.) "A detention to investigate

6.

whether a person is a truant is justified when there are specific and articulable facts causing an officer to suspect, reasonably, that a truancy violation is occurring, and that the person he intends to detain is a truant." (*Id.* at p. 916.)

*Analysis*

Roy contends Couto acted unreasonably because he "was standing outside his home in the presence of an adult" when Couto detained him. We disagree.

In this case, Roy was detained when Couto saw him standing with someone not his parent about 200 hundred feet from his residence during school hours. Prior to encountering Roy in the flower bed, Couto knew Roy was in high school; knew that Roy was attending Dunlap remotely and required to be inside his residence during school hours unless accompanied by a parent; was familiar with Roy's parents; and knew the person with whom Roy was standing in the flower bed was not one of Roy's parents. Based upon these facts, Couto had a reasonable suspicion that Roy was truant. (*Souza*, *supra*, 9 Cal.4th at p. 233.) As in *James D.,* Couto was justified in effecting a detention to determine whether Roy was in violation of truancy laws. (*James D.*, *supra*, 43 Cal.3d at p. 916.)

Roy also claims that Couto should have conducted an investigation into whether or not he was truant prior to doing a pat search and that failure to do so makes the pat search unreasonable. He is incorrect.

Couto was justified in conducting a pat search. When Couto arrived at the apartment complex, he knew that it was covered by a gang injunction, which was in place as a result of violent crimes committed in the area by the Barrio Eastside Reedley Nortenos. That an area is known for gang violence is relevant and may be considered by an officer in deciding whether to conduct a pat search. (*People v. Limon* (1992) 17 Cal.App.4th 524, 534.)

Objective facts showed that Roy was standing with someone unknown to Couto, who was wearing the gang's color, red. Roy and Perez were acting nervous and based

7.

upon his training and experience, Couto knew that gang members often carry weapons. Couto was not required to ignore the fact that Roy appeared to be associating with a gang member and that gang members often are armed. (*In re H.M.* (2008) 167 Cal.App.4th 136, 146.) Couto also need not wait for an overt act of hostility before conducting a pat search for officer safety purposes. (*People v. Rios* (2011) 193 Cal.App.4th 584, 599.)

Couto articulated that he conducted a pat search for officer safety purposes based upon the totality of the circumstances. Contrary to Roy's assertion, Couto is not required to conduct an investigation prior to doing a pat search; the purpose of a pat search is to allow the officer to conduct the investigation without fear of violence or injury. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 373.)

This court "should not lightly second-guess a police officer's decision to perform a pat-down search for officer safety." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957.) We conclude the detention and pat down were constitutionally warranted. (*Glaser, supra,* 11 Cal.4th at p. 362.)

## **DISPOSITION**

The juvenile court's denial of the motion to suppress and the disposition order are affirmed.