Filed 3/3/22  P. v. Seegmiller CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MILES JOSEPH PASION SEEGMILLER,<br><br>        Defendant and Appellant. | A161735<br><br>(San Mateo County<br>Super. Ct. No. 19NF001530A) |

Defendant Miles Joseph Pasion Seegmiller pleaded no contest to attempted murder and second degree robbery, arising out of his shooting and robbing a victim.  (Pen. Code, §§ 664, 187, subd. (a), 212.5, subd. (c).)[1]  On appeal, Seegmiller argues the trial court erroneously denied his motion to suppress evidence — incriminating statements, a firearm, and passcode information for his cellphone — obtained when police officers detained and pat searched him shortly after the shooting.  According to Seegmiller, officers lacked a reasonable suspicion of his involvement in criminal activity necessary to detain and pat search him.  We disagree and affirm.

## BACKGROUND

In January 2019, Seegmiller and his girlfriend met the victim in Seegmiller's neighborhood to buy marijuana.  The victim arrived in a car.

---

[1] Undesignated statutory references are to the Penal Code.

Seegmiller instructed his girlfriend to sit in the front passenger seat of the victim's car, while Seegmiller sat in the back seat behind the victim. After the victim and Seegmiller talked for a few minutes, Seegmiller fired a gun at the back of the victim's head, hitting him in the neck. Seegmiller grabbed the marijuana and fled. His girlfriend fled in a different direction. The victim drove to a nearby school and immediately called 911.

Within four minutes of the victim's call, police officers responded to the victim's location at the school. Several residents in the neighborhood were standing outside watching the police activity. One block away and while driving toward the school, Sergeant Daniel Gil observed Seegmiller walking in the street. He was walking at a brisk pace away from the school. Rather than swinging his arms naturally, Seegmiller pinned his arms toward his stomach and his hands covered his stomach area. Gil noted Seegmiller was wearing a hooded sweatshirt, even though, according to Gil, it was 80 degrees Fahrenheit outside. Seegmiller's hood was pulled tightly around his head and partially concealed his face, which was sweaty. He appeared out of breath — his mouth was gaping open, he was taking deep breaths, and his shoulders were visibly rising and falling. Unlike the other persons in the neighborhood, Seegmiller appeared disinterested in the police activity. Although he did not yet have a description of the suspect, Gil believed Seegmiller's behavior was consistent with a person fleeing a crime scene. Seegmiller walked past Gil, but Gil turned to follow him. Gil then radioed Officer Phillip Nielsen, who was farther down the street, to stop Seegmiller.

As Seegmiller approached Nielsen's police car, Seegmiller put his hands in the front pocket of his sweatshirt. Pursuant to Gil's instructions, Nielsen stopped Seegmiller and ordered him to show his hands and place them on the hood of Nielsen's vehicle. Due to Seegmiller's hand placement

2

and the nature of the crime being investigated — a shooting — Nielsen suspected Seegmiller was reaching for a gun. By that time, Gil also pulled up in front of Seegmiller. Nielsen conducted a pat search of Seegmiller's waistband, and he felt something similar to the grip of a handgun. Based on Nielsen's observations, Gil then searched Seegmiller, yielding a firearm tucked in Seegmiller's waistband.

Approximately seven minutes *after* detaining Seegmiller, officers obtained a description of the shooting suspects — a Hispanic male in his late teens or early 20s, wearing a black sweatshirt with his hood on his head, black pants, and black backpack, and a Hispanic female, late teens or early 20s with black shoulder-length hair, gray sweatshirt, and black pants. A court later noted Seegmiller closely fit the description of the male suspect. Police searched the victim's car and found Seegmiller's cellphone, which he inadvertently left behind. During a police interview, Seegmiller admitted that he intended to rob the victim, and that he shot the victim in the neck. He acknowledged returning to the scene of the shooting to retrieve his cellphone. He also gave officers the passcode for his cellphone.

After Seegmiller was charged with, among other things, attempted premediated murder (§§ 664, 187, subd. (a)), and second degree robbery (§ 212.5, subd. (c)), he moved to suppress evidence of his firearm, statements made to officers, and evidence from his cellphone (§ 1538.5). He argued officers obtained them through an unlawful search and seizure. At a preliminary hearing, Seegmiller presented evidence that the temperature at the time of his detention was 50 degrees Fahrenheit — evidence that conflicted with the officers' observations of the weather and the suspicions raised by Seegmiller's wearing a sweatshirt. The magistrate denied

3

Seegmiller's motion after finding the officers' observations of Seegmiller supported their reasonable suspicion to detain and search him.

Seegmiller renewed his motion to suppress in the trial court. (§ 1538.5, subd. (i).) The trial court ignored the officers' observations of the weather because of the conflicting defense evidence. But under the totality of the remaining circumstances — the officers' observations of Seegmiller's location, unusual manner of walking, heavy breathing, and concealing himself with his clothing, all through the lens of the officers' experience — the court concluded there was reasonable suspicion to detain Seegmiller. The court found, by extension, reasonable suspicion to pat search Seegmiller since he may have been involved in a shooting and for the officers' safety. It then denied the suppression motion. Seegmiller thereafter pleaded no contest to the attempted murder and second degree robbery charge and admitted to various enhancements.

## DISCUSSION

The Fourth Amendment prohibits unreasonable searches and seizures, including brief investigatory stops. (U.S. Const., 4th Amend.; *People v. Barnes* (2013) 216 Cal.App.4th 1508, 1514.) "Evidence obtained from a search or seizure in violation of the Fourth Amendment must be excluded from use at a criminal trial only if required by federal law." (*Barnes*, at p. 1513.) A defendant may move to suppress evidence on the grounds that it was obtained as a result of an unreasonable and warrantless search. (§ 1538.5, subd. (a)(1)(A).) We review issues related to the suppression of evidence obtained from government searches and seizures under federal constitutional standards. (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.) We defer to the trial court's findings if supported by substantial evidence, but

independently determine whether the search or seizure was reasonable under the Fourth Amendment. (*Ibid.*)

## I.

Seegmiller contends his detention, a seizure, was unsupported by a reasonable suspicion he was engaged in criminal activity, and the trial court should have granted his suppression motion. We disagree.

A detention occurs when law enforcement by show of authority or force "restrains the liberty of a person to walk away." (*People v. Souza* (1994) 9 Cal.4th 224, 229.) A warrant is not required for a brief investigative stop — the "temporary detention of a person for the purpose of investigating possible criminal activity"— if reasonable. (*Id.* at pp. 230–231.) A warrantless detention is reasonable "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity" — a reasonable suspicion. (*Id.* at p. 231.) Reasonable suspicion is a less demanding standard than probable cause (*id.* at p. 230), but it requires more than a mere hunch to detain a suspect. (*United States v. Arvizu* (2002) 534 U.S. 266, 274.)

Here, there is no dispute officers detained Seegmiller. His liberty was restricted when he immediately complied with an officer's request to stop and place his hands on the hood of the patrol car. (*People v. Souza, supra*, 9 Cal.4th at p. 229.) But there were specific, articulable facts that Seegmiller may have been involved in criminal activity, rendering this detention lawful. Seven minutes after the victim contacted the police, dispatchers notified officers that the shooter was on foot, a pedestrian. Shortly after, Gil observed Seegmiller walking briskly away one block away from the location of the shooting. Gil observed Seegmiller partially concealing his face with his

hooded sweatshirt, he was sweating, and he was breathing heavily with his mouth gaping open. He noted Seegmiller was walking in an unusual manner, with his arms pinned to his stomach rather than swinging them naturally. Unlike the other residents in the neighborhood, Seegmiller appeared uninterested in the police activity. Gil, an officer with 27 years of law enforcement experience, testified those characteristics were consistent with a person who may have been involved in a crime and possibly attempting to flee. (*People v. Barnes*, *supra*, 216 Cal.App.4th at p. 1514 [officers may rely on their experience and specialized training when making inferences and deductions about the available information].)

The fact that the officer detained Seegmiller even though he lacked a description of the suspect is not, as Seegmiller suggests, dispositive here. (See, e.g., *People v. Conway* (1994) 25 Cal.App.4th 385, 390 [officer reasonably suspected person was involved in a burglary even without a description of the suspects].) And while individually, Seegmiller's individual actions may be justified by innocent explanations — e.g., Seegmiller was simply walking in his neighborhood, people normally place their hands in their pockets on a cold day — along with the other circumstances, Seegmiller's conduct " 'warranted further investigation' " to establish whether the activity was in fact legal or illegal. (*United States v. Arvizu*, *supra*, 534 U.S. at pp. 274–275.) Under the totality of the circumstances — Seegmiller's spatial and temporal proximity to the recent crime, his attire, and his unusual conduct — there was a reasonable suspicion, not a mere hunch, to detain Seegmiller as the possible shooting suspect.

The facts here are distinguishable from those in *People v. Perrusquia* (2007) 150 Cal.App.4th 228, contrary to Seegmiller's assertions. (*Id.* at p. 234 [reversing denial of suppression motion].) In that case, officers detained the

6

defendant who had been sitting in his idling car outside a convenience store in a high-crime area with frequent convenience store robberies, even though there was no information this particular store had been or was about to be robbed. (*Id.* at p. 231.) Here, in contrast, officers were responding to specific criminal activity — a shooting — and were containing the area in an attempt to locate the suspect. (*People v. Conway*, *supra*, 25 Cal.App.4th at p. 388 [considering the timing of the investigation and detention to the criminal activity when assessing reasonable suspicion].) Within minutes of receiving the report of a shooting, officers were dispatched to the scene. Shortly after, Gil saw Seegmiller quickly walking away from the scene of the crime in an unusual manner, possibly concealing something — all of which are specific articulable facts of Seegmiller's potential involvement in criminal activity that justified a brief investigative detention.

To the extent Seegmiller urges us to entirely reject the officers' testimony because there was defense evidence that conflicted with a portion of the officers' testimony — i.e., the weather conditions during Seegmiller's detention — this argument ignores the standard of review. (*People v. Chamagua* (2019) 33 Cal.App.5th 925, 928 [accepting the "trial court's resolution of disputed facts, its evaluations of credibility, and the version of events most favorable to the prosecution"].) Moreover, the trial court expressly ignored the officers' statements regarding the weather, but otherwise credited their testimony. We defer to the court's credibility assessment here. In sum, the detention was supported by the requisite reasonable suspicion.

## II.

Seegmiller contends there was no justification for the pat search. Again, we disagree.

An officer is permitted to conduct a warrantless protective search for weapons incident to a lawful detention if the officer reasonably believes the detained person is armed and presently dangerous to the officer or to others. (*People v. Medina* (2003) 110 Cal.App.4th 171, 176.) This belief must be based on "specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous." (*Ibid.*)

Here, Gil saw Seegmiller walking quickly away from the crime scene location. Gil advised Nielsen to stop Seegmiller based on a reasonable suspicion that he engaged in the shooting. (*Ante*, pp. 6–7.) Upon approaching Seegmiller, Nielsen saw Seegmiller place his hands inside the front pocket of his sweatshirt. Because the officers were responding to a shooting, Nielsen believed Seegmiller could be reaching for a gun. Based on these specific, articulable facts, Nielsen had a reasonable suspicion Seegmiller was armed. The circumstances permitted a protective pat search.[2]

## DISPOSITION

The judgment of conviction is affirmed.

---

[2] In light of this conclusion, we do not address whether the inevitable discovery rule provides an additional basis for denying Seegmiller's suppression motion.

8

_____

Rodríguez, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.

A161735