Filed 6/29/23  Higgins v. Department of Motor Vehicles CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| CODY HIGGINS, | |
| Plaintiff and Appellant, | C096119 |
| v. | (Super. Ct. No. 21CF13535) |
| DEPARTMENT OF MOTOR VEHICLES, | |
| Defendant and Respondent. | |

The Department of Motor Vehicles (DMV) suspended the driver's license of appellant Cody Higgins for driving with a blood alcohol concentration of 0.15 percent. Higgins brought a petition for writ of mandate challenging the suspension.  The trial court denied the petition.  On appeal, Higgins contends that officers lacked reasonable suspicion to stop the car in which he was a passenger when Higgins returned with a friend to the pickup truck Higgins abandoned after a police pursuit.  Disagreeing, we affirm.

1

Around 2:30 a.m. on November 12, 2019, Angels Camp police officer Anthony Sterrett saw a white Dodge RAM pickup truck driving 70 miles per hour in a 55 miles per hour zone. Officer Sterrett pursued, activating his red and flashing blue lights. The truck accelerated, and Officer Sterrett turned on his siren. The truck accelerated to 95 miles per hour (at this point, in a 50 miles per hour zone). The truck turned into a commercial parking lot, and Officer Sterrett followed through the parking lot. Finally, the truck stopped with its front half blocking a roadway.

Officer Sterrett radioed the license plate number of the truck to Calaveras County Sheriff's Office dispatch. When Officer Sterrett got out of his patrol car and approached the truck, he found no one inside. Officer Sterrett requested backup after informing dispatch that the driver had fled on foot. Dispatch advised Officer Sterrett that Higgins was the registered owner of the truck and that he was an associate of one Kimberly Ross.

Two sheriff's deputies arrived to assist in the search for the driver. After an hour of searching, they gave up and returned to search the truck, recovering live ammunition and a large amount of alcohol beverage containers. During the search, Officer Sterrett saw a red Honda drive into the area and five minutes later start to drive away. He recognized the car as belonging to Ross. Officer Sterrett attempted to stop the Honda with his flashlight and hand signals, but the car pulled away. After dispatch confirmed that Ross was the registered owner of the Honda, Officer Sterrett told one of the deputies to effect a traffic stop.

Ross was driving the Honda with Higgins in the passenger seat. After advising Ross of her *Miranda*[1] rights, Officer Sterrett questioned Ross. Ross said that Higgins contacted her earlier and told her he had been out of the area drinking and planned

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

to return to Angels Camp. He eventually arrived at her residence and told her he had been followed by law enforcement and his truck was in a commercial parking lot near where she worked. Higgins did not consume any alcoholic beverages at Ross's residence. He did not tell Ross about the attempted traffic stop of his vehicle. Higgins asked Ross to drive him to his truck to see if officers were at the scene. When they arrived and Ross saw the officers, she became "scared [she would get] into trouble" and tried to leave the area. She saw the police officer attempting to contact her but "did not want to stop and get into trouble." Officer Sterrett informed Ross she was being arrested for aiding Higgins in his attempted escape.

Officer Sterrett questioned Higgins after advising him of his *Miranda* rights, eliciting from Higgins statements that: the truck was his; he had been driving the truck but was unaware of the attempted stop; he stopped because of an exhaust trouble alert on his gauge cluster; and he walked and did not run away from the truck.

Officer Sterrett observed that Higgins had watery, bloodshot eyes, slurred speech, and the smell of alcohol on his breath. Higgins stated that he had consumed a large amount of alcohol at Ross's residence an hour earlier. Higgins declined to take a field sobriety test because he said he would fail. Higgins denied that he had consumed the alcoholic beverages found in his truck while driving, insisting that he consumed alcohol only at Ross's residence. Asked about the live ammunition in the truck, Higgins stated there was a loaded firearm on the floorboard of the back seat. Officer Sterrett informed Higgins he was under arrest for driving under the influence, evading law enforcement, resisting arrest, and possessing a loaded firearm in a vehicle. Higgins agreed to submit to a chemical breath test. At 5:23 a.m., the results of two breath tests showed a blood alcohol concentration of 0.15 percent.

After an administrative hearing, the DMV suspended Higgins's driver's license. At the hearing, Higgins's counsel argued that law enforcement did not have probable cause to stop Ross's car. Counsel objected to consideration of Officer Sterrett's arrest

3

report regarding Higgins's blood alcohol concentration, arguing it resulted from an illegal detention.

Ross testified at the hearing that Higgins has been her friend for more than eight years. On the night of November 12, 2019, Higgins woke Ross at her house, telling her that his truck was having trouble. They went to the truck to retrieve Higgins's wallet and saw that the police were there. When Ross saw the police, she kept driving and was pulled over by law enforcement. Ross said law enforcement informed her she was being arrested for aiding and abetting.

In a written ruling, the hearing officer determined that: (1) Officer Sterrett had probable cause to detain Higgins; (2) based on Higgins's appearance and behavior, as well as his admission of alcohol consumption, Officer Sterrett formed the belief that Higgins was intoxicated; and (3) Officer Sterrett had reasonable cause to believe Higgins was driving a motor vehicle while intoxicated.

Higgins filed a petition for writ of mandate in the trial court contending that the traffic stop of Ross's car was an illegal detention and the blood test did not establish Higgins's blood alcohol concentration because it was taken more than three hours after his truck was observed driving. At the hearing on the petition, the trial court commented that the traffic stop was appropriate because the officer tried to signal to Ross to stop, but "she took off" and "evaded" law enforcement, which furnished a basis for the stop. The trial court entered judgment denying the petition, finding that "the Administrative Record reflects sufficient evidence to show there was reasonable cause to detain" Higgins and his blood alcohol test was taken within three hours from when he was last seen driving his truck.

DISCUSSION

Higgins contends his driver's license was suspended based on a police officer's "hunch" that Ross was aiding and abetting Higgins. The DMV asserts there was reasonable suspicion to stop Ross's car containing Higgins given the high-speed pursuit

4

of his truck, his flight on foot, and the appearance of Ross's car driving by the officers searching Higgins's truck in the early hours of the morning, then driving off when Officer Sterrett signaled Ross to stop. We agree with the DMV.

A.      *Standard of Review*

On a petition for writ of mandate challenging suspension of a driver's license, the trial court exercises its independent judgment to determine whether the weight of the evidence supports the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456-457.) On appeal, the court reviews the record to determine whether substantial evidence supports the trial court's findings, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the lower court's decision. (*Id.* at p. 457; *Auburn v. Department of Motor Vehicles* (2007) 151 Cal.App.4th 1480, 1484 (*Auburn*).)

B.      *Reasonable Suspicion to Stop Ross's Car*

Higgins asserts he was illegally detained because Officer Sterrett did not have reasonable suspicion to detain Ross. Higgins claims that the "detention of the Ross vehicle was not based upon facts, but only a hunch."

"[A]n officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case." (*People v. Wells* (2006) 38 Cal.4th 1078, 1082-1083.)

"To justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts which, viewed objectively, would cause a reasonable officer to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person the officer intends to stop or detain is involved in that activity." (*People v. Conway* (1994) 25 Cal.App.4th 385, 388 (*Conway*); see *In re Tony C.* (1978) 21 Cal.3d 888, 893.)

5

"The standard of reasonable suspicion is 'less demanding than probable cause "not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." ' [Citation.] At the same time, however, 'no stop or detention is permissible when the circumstances are not reasonably "consistent with criminal activity" and the investigation is therefore based on mere curiosity, rumor, or hunch.' " (*Auburn, supra*, 151 Cal.App.4th at p. 1484; see *Kansas v. Glover* (2020) 589 U.S. __ [206 L.Ed.2d 412, 140 S.Ct. 1183, 1187] (*Kansas*) [" 'Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probably cause.' "].)

Higgins argues that the DMV justified the detention of Ross by arguing facts concerning "the operation of the truck earlier by an unknown driver, Appellant, which were not known when the stop of Ms. Ross occurred and therefore could not be used to justify her detention." We disagree that the driver of the truck was unknown. At the time police officers discovered the truck was abandoned, a records check of the license plate determined Higgins was the registered owner. In *Kansas v. Glover*, the United States Supreme Court explained that the reasonable suspicion standard " 'depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act.' " (*Kansas, supra*, 140 S.Ct. at p. 1188, original italics.) Courts therefore "must permit officers to make 'commonsense judgments and inferences about human behavior.' " (*Ibid.*, quoting *Illinois v. Wardlow* (2000) 528 U.S. 119, 125 (*Illinois*); see *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 236.) The court held that it was a "commonsense inference" that the registered owner of a vehicle was likely the vehicle's driver. (*Kansas*, at p. 1188.)

Here, Officer Sterrett could likewise draw the commonsense inference that Higgins, the registered owner, was driving his pickup truck earlier. The officer could also draw a commonsense inference that Ross was driving the Honda the officer knew belonged to her, when it appeared in a commercial parking lot in the early morning hours where officers were conducting a search of Higgins's truck. Further, it was reasonable for the officer to infer that Ross, a person the officer knew to be Higgins's associate, had driven at Higgins's behest to the exact location where he had abandoned his truck after a high-speed pursuit, in order to determine whether officers were still at the scene, and thus aid and abet Higgins in evading law enforcement.

When Ross drove off as Officer Sterrett attempted to flag her down—and Officer Sterrett confirmed the Honda was registered to Ross—the officer had more than reasonable suspicion to direct a sheriff's deputy to initiate a traffic stop. "While such evidence of flight, of itself, is not sufficient to justify an investigative stop, it 'is a proper consideration—and indeed can be key factor—in determining whether in a particular case the police have sufficient cause to detain.' " (*People v. Turner* (2013) 219 Cal.App.4th 151, 168, quoting *People v. Souza* (1994) 9 Cal.4th 224, 235; see *United States v. Brignoni-Ponce* (1975) 422 U.S. 873, 885 ["obvious attempts to evade officers can support a reasonable suspicion"]; *Illinois, supra*, 528 U.S. at p. 124 ["nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"]; *Conway, supra*, 25 Cal.App.4th at pp. 389-390 [officer had reasonable suspicion sufficient to stop defendant's car at 3:00 a.m. driving from the direction of the house burglarized two minutes before, where no one else was in the area]; *People v. Lloyd* (1992) 4 Cal.App.4th 724, 733-734 [reasonable suspicion to detain suspect found at 4:00 a.m. next to a business in which a silent alarm was triggered, who began to walk away when officers approached].)

Since law enforcement officers acted in an objectively reasonable manner in stopping Ross, the trial court properly denied Higgins's petition for writ of mandate.

7

## DISPOSITION

The judgment denying the writ of mandate is affirmed.


                                         /s/
                                      MESIWALA, J.


We concur:


   /s/
HULL, Acting P. J.


   /s/
RENNER, J.

8